United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARYLON BOYD, ET AL., | No. C-04-5459 MMC (JCS) |
| Plaintiffs, | **ORDER DENYING SAN FRANCISCO DISTRICT ATTORNEY'S OFFICE'S MOTION TO QUASH PLAINTIFFS' SUBPOENA DUCES TECUM [Docket No. 43]** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, ET AL., | |
| Defendants. | |

## I. INTRODUCTION

On December 27, 2004, Plaintiffs Marylon Boyd, Isabel Gonzalez, and Kanani Boyd filed a complaint against Defendants City and County of San Francisco, San Francisco Police Department Chief Heather Fong, and a number of San Francisco Police Department Officers, alleging civil rights violations and wrongful death in connection with the May 5, 2004 shooting death of Cammerin Boyd. On January 17, 2006 Plaintiffs issued a subpoena duces tecum to the San Francisco District Attorney's Office ("District Attorney"), requesting production of materials related to Cammerin Boyd, his prior arrests, and the May 5 shooting. The District Attorney brought a Motion to Quash Plaintiffs' Subpoena Duces Tecum ("the Motion"). The Court finds that the Motion is suitable for disposition without oral argument, pursuant to Local Rule 7-1(b). **Accordingly, the hearing on the Motion scheduled for May 5, 2006 at 9:30 a.m. is vacated.** For the reasons stated below, the Motion is DENIED.

## II. BACKGROUND

### A. Facts

Plaintiffs allege in their Complaint that on May 5, 2004, Cammerin Boyd, who was an African-American man and a double amputee with prosthetic legs below the knee, was shot to death by officers of the San Francisco Police Department. Complaint at ¶ 17, 20. According to Plaintiffs, Cammerin Boyd, who was being pursued in his car by police, stopped and exited his car on a residential street to surrender. *Id.* at ¶¶ 17, 19. While he was attempting to surrender, he was shot by police. *Id.* at ¶ 17. Plaintiffs allege that a number of patrol cars and several police officers were present at the time of the shooting. *Id.* at ¶ 18. Plaintiffs' complaint names as defendants the City and County of San Francisco, San Francisco Police Chief Heather Fong, and San Francisco Police Officers William Elieff, Gregory Kane, James O'Malley, Timothy Paine, and Steven Stearns, as well as 10 unnamed defendants. Based on these allegations, Plaintiffs assert federal law claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act (42 U.S.C. § 12101, et seq.), as well as state law claims for wrongful death (Cal. Code Civ. Proc. § 377.60), negligence and negligent hiring, supervision and retention. Plaintiffs are the mother and children of Cammerin Boyd, pursuing this case on their own behalf and as successors in interest of Cammerin Boyd's causes of action, under 42 U.S.C. § 1983 and California Code Civ. Proc. § 377.34.

On January 17, 2006, Plaintiffs issued a Subpoena for Documents Pursuant to Federal Rules of Civil Procedure Rule 45 (the "Subpoena") directed to the Custodian of Records for the District Attorney for the City and County of San Francisco. *See* Motion, Exh. A. The Subpoena demanded production of the following documents:

1. The complete case file maintained by YOU for Cammerin Boyd.

2. Any and all documents which mention, discuss, pertain to, outline, narrate, and/or describe Cammerin Boyd.

3. Any and all documents which mention, discuss, pertain to, outline, narrate, and/or describe the police shooting involving Cammerin Boyd which occurred on May 5, 2004.

*Id.* at 4.

On February 9, 2006, the San Francisco District Attorney's Office filed a motion to quash

2

1  Plaintiffs' Subpoena.  According to the District Attorney, at the time of the Motion,
2  discussions between the parties had led to a narrowing of the document request.  As a result, the
3  request now covered only the following documents:

4      1)    All reports, including reports created by any law enforcement or government agency, statements, interviews (transcripts, audio, video), medical reports, documents filed with the Court, photographs, etc, for any case involving Cammerin Boyd.  This includes any of Mr. Boyd's priors as well as the incident where he was fatally wounded by officers from the San Francisco police department.

7      2)    All documents which reflect the disposition of any case involving Cammerin Boyd.
8  Motion at 3 & Ex. B.

9      In their Opposition to the Motion, filed April 14, 2006, Plaintiffs reported that as a result of
10 additional meet and confer, the range of documents they seek through the subpoena has been further
11 reduced.  Opposition at 3.  In particular, the District Attorney and Plaintiffs have reached the
12 following agreements: 1) the District Attorney will provide any documents that have been disclosed
13 to the City Attorney, including numerous recorded witness statements that were not included in the
14 homicide file; 2) Plaintiffs will not, for the time being, seek documents revealing the impressions
15 and opinions of attorneys at the District Attorneys' office, as these documents are primarily relevant
16 to Plaintiffs' *Monell* claims, which have been stayed; and 3) based on representations that the
17 majority of Cammerin Boyd's files involving incidents that are not the subject of this lawsuit are
18 available from public records, Plaintiffs do not seek documents related to other criminal cases
19 involving Cammerin Boyd.  *Id.* at 3.

20     In light of the above, the remaining issue before the Court is whether the District Attorney is
21 required to produce the following categories of documents: 1) documents which reveal the identity
22 and contact information of witnesses, including "reluctant witnesses," to the events which are the
23 subject of the lawsuit; and 2) statements or narratives describing what those witnesses observed.  *Id.*
24 at 1.  Plaintiffs report having offered to enter into a protective order which would limit dissemination
25 of these documents, but they claim that the District Attorney has nonetheless refused to produce the
26 requested documents. *Id.* at 3.

3

**B.     The Motion**

In the Motion, the District Attorney argues that it should not be compelled to produce the documents sought by Plaintiffs because Plaintiffs do not have a substantial interest in those documents. The District Attorney distinguishes *Doubleday v. Ruh,* 149 F.R.D 601 (C.D. Cal. 1993), in which a federal district court held that the district attorneys' prosecution files were discoverable in a subsequent civil action for malicious prosecution. According to the District Attorney, the files at issue here, unlike those in *Doubleday*, are not those of the plaintiff in the subsequent action but rather, the investigatory files of the Officer Involved Shooting ("the OIS files"). The OIS files, the District attorney asserts, differ from the closed investigatory files at issue in *Doubleday* because: 1) Plaintiffs have a less substantial interest in such files; and 2) because of the lack of statute of limitations, such files are never "closed." The District Attorney argues further that these prosecutorial files would be entitled to protection under state law, and therefore, in the interest of comity, the files should not be discoverable. Finally, the District Attorney invokes the Official Information Privilege, a federal common law privilege that protects from disclosure official information where the potential harm that might result from disclosure outweighs the potential benefits.

In response, Plaintiffs argue that *Doubleday* supports disclosure of the documents sought. Plaintiffs assert that under *Doubleday*, the work product doctrine does not apply to the District Attorney's files and even if it did, any protection is outweighed by the plaintiff's substantial need to obtain the documents. Plaintiffs argue that the witness statements they seek go to the heart of their case and that any potential detriment of production can be addressed through a protective order. Plaintiffs also reject the District Attorney's reliance on state law and the Official Information Privilege, which Plaintiffs assert do not apply here.

**III.    ANALYSIS**

**A.     Choice of Law**

Pursuant to Federal Rule of Evidence 501, assertions of privilege in federal question cases are governed by federal law, while state privilege law applies to purely state claims brought in

4

federal court pursuant to diversity jurisdiction. Fed.R.Evid. 501. State law claims that are pendent to federal question cases, however, are governed not by state law but by federal privilege law. *Wm. T. Thompson, Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100, 104 (3rd Cir.1982); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458-459 (N.D.Cal.1978).

The work product doctrine is not a privilege but a qualified immunity that is governed by federal law. *Doubleday*, 149 F.R.D. at 605 n. 3 (citing Fed. R. Civ. P. 26(b)(3)).

### B. *Doubleday* and the Work Product Doctrine

The District Attorney asserts that under the reasoning of *Doubleday*, the documents sought by Plaintiffs should be protected from discovery. Plaintiffs, on the other hand, assert that *Doubleday* supports disclosure. The Court concludes that Plaintiffs have the stronger argument.

In *Doubleday*, the plaintiff brought a malicious prosecution action in federal court after she was the subject of a criminal prosecution by the Sacramento County District Attorney's Office in which she was found not guilty of assault and battery on a peace officer. 149 F.R.D. at 604. In the action, she sued the County Sheriff's Department and various officers under 42 U.S.C. § 1983 and state law, alleging that they had conspired to use excessive force and to coerce the district attorney's office into prosecuting her criminally. *Id*. By subpoena, the plaintiff sought to obtain from the district attorney the criminal file used to prosecute her in the prior criminal case. The district attorney brought a motion to quash, which the court denied. *Id*. First, the Court rejected the district attorney's reliance on the work product doctrine, concluding that the work product doctrine did not apply because the documents sought were not created by or for a party to the subsequent litigation. *Id*. at 606. In particular, the court held, looking to California law, that the County was not a party to the prior criminal litigation, nor could the County be considered to be the district attorney's client such that the doctrine might apply. *Id*. (citing *Shepard v. Superior Court of Alameda County*, 17 Cal. 3d 107, 122 (1976)). The Court went on to conclude that even if the work product doctrine applied, the documents had to be produced because the plaintiff had shown substantial need for the documents as well as an inability to obtain them without undue hardship. *Id*. at 607. The Court also rejected the district attorneys' reliance on the California Government Code § 6254(f) and the

doctrines of Governmental Decision Maker Immunity and Official Government Information Privilege. *Id*. at 607-612.

Here, as in *Doubleday*, the files at issue are prosecutorial files maintained by the District Attorney. The District Attorney is not a party to this litigation and therefore, the work product doctrine does not apply. *See id.; see also In re Cal. Pub. Utility Comm'n,* 892 F.2d 778, 781 (9th Cir.1989) (holding that "[Rule 26(b)(3) ], on its face, limits its protection to one who is a party . . . to the litigation in which the discovery is sought").

Even if the work product doctrine did apply, however, the Court concludes that Plaintiffs have shown, as in *Doubleday*, that they are entitled to the documents because they have a substantial interest in the documents and they will be unable to obtain the information from other sources without under hardship. *See Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981) (holding that qualified work product – that is, work product that protects an attorney's factual investigations – is subject to disclosure if party seeking discovery can show that "substantial need" and that it will be unable to obtain information from other sources). This case involves allegations that police officers used excessive force against Cammerin Boyd when they shot him. If these allegations are true, the identities and contemporaneous statements of witnesses are likely to provide the best evidence of excessive force. *See Doubleday*, 149 F.R.D. at 608. Further, Plaintiffs may not be able to obtain this information in any other way. Therefore, the Court concludes that the work product doctrine does not protect from disclosure the documents Plaintiffs seek.

### C. The Official Government Information Privilege

The District Attorney asserts that the documents Plaintiffs seek are also protected under the Official Government Information Privilege. The Court concludes, however, that the District Attorney has failed to meets its burden as to this privilege.

Federal common law recognizes a qualified privilege for official information. *Kerr v. United States District Court for the Northern District of California*, 511 F.2d 192, 197 (9th Cir. 1975). To determine whether the information sought is privileged, courts must conduct a case-specific balancing, weighing the potential benefits of disclosure against the potential disadvantages. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990), *cert. denied*, 502 U.S. 957 (1991) (citing

*Kerr*, 511 F.2d at 198).  Among the factors courts consider in conducting this balancing are the following:

> 1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information.
>
> 2) The impact upon persons who have given information of having their identities disclosed.
>
> 3) The degree to which government self-evaluation and consequent program improvement will be chilled by disclosure.
>
> 4) Whether the information sought is factual data or evaluative summary.
>
> 5) Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question.
>
> 6) Whether the police investigation has been completed.
>
> 7) Whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation.
>
> 8) Whether the plaintiff's suit is non-frivolous and brought in good faith.
>
> 9) Whether the information sought is available through other discovery or from other sources.
>
> 10) The importance of the information sought to the plaintiff's case.

*Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973).

In order to invoke the Official Government Information Privilege, the entity asserting the privilege must make a "substantial threshold showing." *Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987).  In particular, the entity must provide a declaration or affidavit from a responsible official in the agency involved, based on personal knowledge, that:  1) attests that the agency involved generated or collected the information sought and has maintained its confidentiality; 2) states that the official has reviewed the materials in question personally; 3) identifies specifically the governmental or privacy interests that would be harmed by disclosure; 4) describes how disclosure subject to a carefully crafted protective order would still risk harm to those interests; and 5) projects the level of harm to those interests if disclosure would be made. *Id*.

The District Attorney has failed to meet its burden on two levels.  First, it has failed to meet its threshold burden by providing the affidavit described above.  There is no declaration by any official stating that the official has reviewed the files at issue or identifying any *specific*

governmental or privacy interest raised by Plaintiffs' request for documents in this case. Nor has the District Attorney addressed why any potential harm of disclosure cannot be adequately addressed through a protective order.

Second, even if this procedural requirement were met, the District Attorney has failed to establish that the disadvantages of disclosure in this case outweigh the Plaintiffs' need for the documents sought. While the District Attorney has identified potential perils that could result *generally* from the disclosure of the OIS files, it has failed to provide specific information about the governmental and privacy interests that would be jeopardized by the disclosure of the documents sought *in this case*. For example, the District Attorney states that the OIS files are sensitive files with long life-spans because there is no statute of limitations and therefore, the files are never "closed." The District also notes that "interference with ongoing investigations by tainting witnesses is always a real possibility." Yet the District Attorney does not state that the request seeks documents that are being used in any active investigation. Rather, the District Attorney argues that if new evidence is discovered, a file "may be reactivated" and that production of the files therefore jeopardizes potential prosecutions. The District Attorney also suggests that it might face civil or criminal liability for disclosure of private information. Yet the District Attorney does not identify any specific documents that might raise the possibility of such liability. In short, while the concerns raised are, in the abstract, significant ones, the District Attorney has failed to specifically address how the governmental interest is jeopardized by disclosure in this case. On the other hand, the documents sought may well be crucial to Plaintiffs' case and the information sought is unlikely to be available anywhere else. Accordingly, the Court concludes that District Attorney has failed to establish that the Official Government Information privilege applies.

### D.     California Government Code § 6254(f)

The District Attorney argues that in the interests of comity, the Court should grant its Motion based on California Government Code §6254(f). Section 6254 provides that "any investigatory or security files" compiled by any state or local agency for law enforcement purposes are not required to be disclosed, "except that state and local law enforcement agencies shall disclose the names and addresses of persons involved in, or witnesses other than confidential informants" to an incident, as

8

1  well as "statements of the parties involved in the incident, the statements of all witnesses, other than
2  confidential informants." Cal. Gov't Code § 6254(f).  These records are to be disclosed "to the
3  victims of an incident, or an authorized representative thereof," unless disclosure would "endanger
4  the safety of a witness" or "endanger the successful completion of the investigation." *Id.*  The Court
5  concludes that even if state law were applicable, this section would not support the District
6  Attorney's position.

7  As noted, questions of privilege that arise in the course of the adjudication of federal rights
8  are governed by principles of federal common law. *United States v. Zolin*, 491 U.S. 554, 562 (1989);
9  Fed.R. Evid. 501.   Even so, in ascertaining federal common law, the Court may "borrow" applicable
10 law not inconsistent with federal principles. *Soto v. City of Concord*, 162 F.R.D. 603, 609 n. 2 (N.D.
11 Cal. 1995) (citing *Pagano v. Oroville Hosp.*, 145 F.R.D. 683, 685 (E.D. Cal. 1993)).

12 However, even assuming that § 6254(f) is consistent with applicable federal law in this case,
13 it would not bar disclosure in the present circumstances.  First, § 6254 does not apply to discovery
14 sought in a civil action.  *ACLU v. Deukmejian*, 32 Cal. 3d 440, 451 (1982) (noting that under Cal.
15 Gov. Code § 6260, § 6254 would not preclude discovery in a civil action)."  Second, the District
16 Attorney has not established that the disclosure would endanger witnesses or an ongoing
17 investigation, as required under § 6254(f).  *See Williams v. Superior Court of San Francisco*, 5 Cal.
18 4th 337, 349 (1993).  In particular, the District Attorney has not claimed that the release of witness
19 information or statements would endanger those witnesses.  It asserts only that disclosure might
20 have a chilling effect that would make future witnesses less likely to come forward.  Yet the District
21 Attorney has not addressed why a carefully crafted protective order would not ameliorate these
22 problems.  Further, the District Attorney has not stated that any investigation is ongoing, even
23 though it has raised the possibility that an investigation might be reopened.  Therefore, § 6254 does
24 not bar disclosure.

25 **IV.   CONCLUSION**

26 For the reasons stated above, the District Attorney's Motion to Quash is DENIED.  The
27 following documents sought by Plaintiffs shall be produced, subject to a protective order to be
28 negotiated by the Plaintiffs and the District Attorney: 1) documents which reveal the identity and

9

contact information of witnesses, including "reluctant witnesses," to the events which are the subject of the lawsuit; and 2) statements or narratives describing what those witnesses observed. Plaintiffs and the District Attorney are directed to meet and confer within fourteen (14) days of the date of this order regarding a proposed protective order, which shall be submitted to the Court for approval no later than twenty-one (21) days of the date of this order.

IT IS SO ORDERED.

Dated: May 1, 2006

JOSEPH C. SPERO
United States Magistrate Judge