UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARYLON BOYD, ET AL., | No. C-04-5459 MMC (JCS) |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH OR MODIFY SUBPOENA AND FOR A PROTECTIVE ORDER BY CALIFORNIA DEPARTMENT OF CORRECTIONS [Docket No. 64]** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, ET AL., | |
| Defendants. | |

## I. INTRODUCTION

On November 4, 2005, Defendant City and County of San Francisco served on the California Department of Corrections and Rehabilitation (CDCR) two subpoenas for the medical records of Cammerin Boyd, whose death is the subject of this civil rights action. CDCR brings a Motion to Quash or Modify Subpoena and for a Protective Order ("the Motion"), in which Plaintiffs have joined.[1] The Court finds that the Motion is suitable for disposition without oral argument, pursuant to Local Rule 7-1(b). **Accordingly, the hearing on the Motion scheduled for May 26, 2006 at 9:30 a.m. is vacated.** For the reasons stated below, the motion is GRANTED in part and DENIED in part.

---

[1] The City and County of San Francisco filed an objection to Plaintiffs' joinder, arguing that it should be stricken as untimely because it was filed after briefing on the Motion was completed and did not allowed Defendant the opportunity to respond to Plaintiffs' arguments. The Court overrules Defendant's objection and declines to strike the joinder. Because the hearing was continued for a week and The City and County of San Francisco was permitted to file a supplemental brief, Plaintiffs' joinder does not prejudice Defendant.

## II. BACKGROUND

### A. Facts

Plaintiffs allege that on May 5, 2004, Cammerin Boyd, who was an African-American man and a double amputee with prosthetic legs below the knee, was shot to death by officers of the San Francisco Police Department. Complaint at ¶ 17, 20. According to Plaintiffs, Cammerin Boyd, after being pursued in his car by police, stopped and exited his car on a residential street in order to surrender. *Id.* at ¶¶ 17, 19. Plaintiffs allege that although Boyd told police officers that he had no legs, and although Boyd could neither run nor get down on the ground, the officers shot him. *Id.* at ¶ 20.

Plaintiffs assert federal law claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act (42 U.S.C. § 12101, et seq.), as well as state law claims for wrongful death (Cal. Code Civ. Proc. § 377.60), negligence and negligent hiring, supervision and retention. Plaintiffs are the mother and children of Cammerin Boyd.

On November 4, 2005, Defendant served CDCR with two subpoenas seeking production of records pertaining to Cammerin Boyd. *See* Declaration of Suzanne Foley Sprague in Support of Motion to Quash or Modify Subpoena and for a Protective Order ("Sprague Decl."), ¶ 3 & Exs. A and B. The first subpoena was served on the CDCR Archive Unit and seeks the following documents:

> Any and all medical records pertaining to Cammerin Boyd, DOB: 02/04/1975, SS#:, including any and all billing records, including payments received, write-offs and adjustments, [a]ny and all original xrays, MRI films and CT scans, including all records from California Dept of Corrections and Rehabilitation . . .

*Id.*, Ex. A. The second subpoena was served on CDCR's California Institution for Men and seeks the following documents:

> Any and all medical records pertaining to Cammerin Boyd, DOB:02/04, SS#:, including any and all billing records, including payments received, write-offs and adjustments. Any and all original xrays, MRI films and CT scans.

*Id.*, Ex. B. In connection with the subpoenas, the City and County of San Francisco sought a release from Plaintiffs allowing CDCR to produce the requested records. Declaration of Scott Wiener in

2

Support of Defendants' Opposition to California Department of Corrections and Rehabilitations' Motion to Quash or Modify Subpoena and for a Protective Order ("Wiener Decl."), ¶¶ 5, 6 & Exs. C, D. However, Plaintiffs did not respond and have not agreed to a release. *Id*. at ¶ 7. Consequently, CDCR refused to produce the records sought in the subpoenas. Wiener Decl., ¶ 4 & Ex. B.

### B. The Motion

In its Motion, CDCR asserts that the subpoenas should be quashed, or in the alternative, modified, because they are overbroad and request information that is protected as private. CDCR cites to California Civil Code section 56 (the "Confidentiality of Medical Information Act"), California Health and Safety Code § 121070 and the federal Health Insurance Portability and Accountability Act ("HIPAA"), Pub.L. No.104-191, 110 Stat.1936 (1996). CDCR also requests that the Court issue a protective order if it is required to produce any medical records. Finally, it suggests that it may be appropriate for the Court to conduct an *in camera* review of the documents.

Plaintiffs join in CDCR's motion. In addition to the arguments raised by the CDCR, Plaintiffs cite to the federal psychotherapist-patient privilege and Rule 501 of the Federal Rules of Evidence as a basis for granting the Motion. Plaintiffs assert that that privilege applies because Plaintiffs have not waived it by placing Cammerin Boyd's mental state in issue. Plaintiffs further assert that Defendant's theory of relevance concerning Boyd's state of mind – that at the time of the relevant events he was attempting to commit "suicide by cop" – fails because there is no competent evidence that this was his intent.

In its opposition to the motion, the City and County of San Francisco asserts that the documents it seeks should be produced because they are relevant and are not privileged, and all HIPAA requirements have been met. Defendant advances three theories of relevance. First, Defendant asserts that Boyd's medical records are relevant to damages that may be claimed under California's Wrongful Death statute, including financial support Boyd would have contributed to his family over the course of his life, the value of his household services and loss of his love and companionship. In particular, California law allows a jury to consider the decedent's life expectancy, taking into account his health habits and lifestyle as well as any suicidal or self-

3

1   destructive impulses in determining these amounts.  Second, Defendant asserts that the records
2   sought are relevant to Boyd's ability to drop to the ground in response to police commands, as well
3   as his ability to flee from the scene, which is directly relevant to Boyd's state of mind at the time he
4   was shot.  Third, Defendant asserts that these documents (particularly the mental health records) are
5   relevant to the question of whether Boyd may have committed "suicide by cop."

6   On the question of privilege, Defendant divides the records sought into two categories:
7   medical records and psychotherapist-patient records.  With respect to the former, Defendant asserts
8   that federal law applies because Plaintiffs assert both federal and state law claims, and that under
9   federal law, there is no physician-patient privilege.  With respect to the psychotherapist-patient
10  records, Defendant asserts that Plaintiff has waived that privilege by placing Boyd's mental state at
11  the time of the shooting in issue and by seeking damages that could be affected by his mental
12  condition.

13  Defendant asserts that to the extent HIPAA may limit disclosure of medical records,
14  Defendant has complied with its requirements and therefore, HIPAA does not prevent disclosure of
15  the documents.  In particular, Defendant notes that it issued valid subpoenas for the records, that it
16  served copies of the subpoenas on Plaintiffs and that at the time of Defendant's Opposition,
17  Plaintiffs had not filed a motion for a protective order or opposed the subpoenas.  In addition,
18  Defendant asserts that disclosure complies with the relevant requirements of Rule 26 of the Federal
19  Rules of Civil Procedure because the documents are relevant and any privilege that might have
20  obtained has been waived.

21  Finally, Defendant argues that the Motion should be denied because it is untimely.  In
22  particular, CDCR did not object to the subpoenas within fourteen days of the date on which they
23  were served or prior to the noticed depositions.

24  In its supplemental brief addressing the arguments raised in Plaintiffs' joinder, Defendant
25  argues that there is already some evidence that Cammerin Boyd committed suicide by cop and
26  therefore, that the psychotherapist-patient records are relevant.  Defendant further asserts that
27  Plaintiffs waived any privilege when they asserted that Cammerin Boyd was attempting to surrender
28  rather than committing suicide by cop.

4

## III. ANALYSIS

### A. Choice of Law

Rule 501 of the Federal Rules of Evidence provides as follows:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the Courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501. Thus, under Rule 501, it is clear that federal claims asserted in a federal question case are governed by federal common law. Further, it is been held that where state law claims overlap with federal claims in a federal question case such that particular documents are relevant to both the state and the federal claims, federal privilege law also applies. *Wm. T. Thompson, Co. v. Gen. Nutrition Corp., Inc.*, 671 F.2d 100, 104 (3rd Cir.1982); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458-459 (N.D. Cal. 1978). On the other hand, where the documents sought are relevant *only* to pendant state law claims and not to the federal claims in a federal question case, at least one court has held that state privilege law applies. *See Platypus Wear, Inc. v. K.D. Co., Inc.*, 905 F. Supp. 808, 811 (S.D. Cal. 1995) (holding that state privilege law applied to state law claim in federal question case where the evidence sought went only to state law theories of liability and the plaintiff had advanced no theory under which the evidence could be relevant to the federal claims in the case).

### B. Legal Standard

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Rule 26(b)(1) further provides that "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

### C.   Medical Records[2]

The City and County of San Francisco seeks medical records based on two theories of relevance: 1) Cammerin Boyd's ability to run away from the scene and/or to comply with police demands that he drop to the ground are relevant to the reasonableness of the police officers' actions; and 2) Cammerin Boyd's health and lifestyle are relevant to damages on Plaintiff's wrongful death claim.  With respect to the former theory, the Court concludes that at least some medical records, namely, those that are related to Boyd's mobility, are relevant to Plaintiffs' § 1983 claims.  A central issue raised by those claims is whether the police officers acted reasonably in light of the facts and circumstances confronting them.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that all § 1983 excessive force claims involving arrests and investigatory stops are governed by the reasonableness standard that applies to Fourth Amendment violations).  Plaintiffs have suggested the officers did not act reasonably because they knew Boyd had prosthetic legs and therefore could not run away or drop to the ground.  Thus, medical records relating to Boyd's mobility may be relevant to the outcome on these claims.

Boyd's medical records may also be relevant to the damages sought by Plaintiffs on their wrongful death claim.  Under California law, medical conditions that might affect life expectancy can be considered in determining wrongful death damages.  *See Allen v. Toledo*, 109 Cal. App. 3d 415, 424 (1980) ("the life expectancy of the deceased is a question of fact for the jury to decide considering all relevant factors including the deceased's health, lifestyle and occupation").  Therefore, Boyd's medical records are relevant to Plaintiffs' wrongful death claim.

Because the documents sought are relevant to Plaintiffs' claims, they must be produced unless they are privileged.  In determining whether the medical records sought by the City and County of San Francisco are privileged, the Court must determine whether state or federal privilege law applies.  As discussed above, to the extent the documents sought are relevant to a federal claim or to both a state and federal claim, it is established that federal privilege law applies.  Because

---

[2] To the extent that any medical records involve mental health treatment, they are considered psychotherapist-patient records for the purposes of this motion.

6

documents relating to Cammerin Boyd's mobility are relevant to Plaintiff's claim under 42 U.S.C. § 1983, it is clear that these documents are governed by federal privilege law. *See Graham v. Connor*, 490 U.S. at 395 (holding that reasonableness inquiry requires "careful attention to the facts and circumstances of each particular case, including . . . whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight"). Because there is no physician-patient privileged under federal law, *see Hutton v. City of Martinez*, 219 F.R.D. 164, 166 (N.D. Cal. 2003), these documents must be produced.

On the other hand, the only theory of relevance advanced by Defendant as to medical records unrelated to Boyd's mobility is based on Plaintiffs' state law wrongful death claim. The Court finds no clear Ninth Circuit authority addressing whether, under these circumstances, federal or state privilege law should be applied. The Court concludes, however, that the documents should be produced regardless of whether state or federal privilege law applies. First, as stated above, there is no physician-patient privilege under federal law. Second, even if state privilege law applies, California courts have held that under California law the physician-patient privilege is waived where, as here, a plaintiff has placed those records in issue by seeking damages that may be affected by the patient's medical condition. *See In re Lifschutz*, 2 Cal. 3d 415, 433-434 (1970). Therefore, any privilege that might exist under California law as to Boyd's medical records has been waived.

Accordingly, the CDCR is required to produce all of the medical records sought by the City and County of San Francisco.[3]

### C. Psychotherapist Records

The City and County of San Francisco asserts that Boyd's psychotherapist records are relevant to both Plaintiffs' damages on the wrongful death claim (because any fault on the part of Boyd is attributable to the surviving plaintiffs in a wrongful death action) and to Boyd's state of

---

[3] In light of the Court's finding that disclosure is required under Rule 26 of the Federal Rules of Civil Procedure, disclosure of Cammerin Boyd's medical records does not violate HIPAA. Under HIPAA, "a covered entity may use or disclose protected health information to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law." 45 C.F.R. § 164.512(a)(1).

7

mind at the time of the events, which in turn goes to whether the officers involved acted reasonably for the purposes of Plaintiffs' § 1983 claims. The Court agrees. Because these records are relevant to both Plaintiffs' state and federal claims, federal privilege law applies.

In *Jaffee v. Redmond*, the Supreme Court held that there exists a psychotherapist-patient privilege under federal common law. 518 U.S. 1, 15 (1996). Specifically, "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Id*. The Court expressly rejected the balancing approach that some courts had taken in determining whether such a privilege applied. *Id*. at 17. It acknowledged, however, that the privilege could be waived. *Id*. at 15, n. 14.

In the wake of *Jaffee*, courts have struggled to determine the circumstances under which waiver of the psychotherapist-patient privilege occurs. *See Fitzgerald v. Cassill*, 216 F.R.D. 632, 640 (N.D. Cal. 2003) (reviewing case law addressing waiver). Some courts have taken a broad approach to waiver, finding, for example, that mere assertion of a claim for emotional distress damages is enough to justify a finding of waiver. *See id.* (citing *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127 (E.D. Penn. 1997); *Doe v. City of Chula Vista*, 196 F.R.D. 562 (S.D. Cal. 1999)). These cases focus on fairness considerations. *Id*. Other courts have taken a narrow approach, holding that there must be an affirmative reliance on the psychotherapist-patient communication before the privilege is waived. *See id*. (citing *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D. Mass. 1997)). These latter cases are based on the primacy of the privacy interest that is inherent in the privilege. *Id*. Finally, some courts have taken a "limited broad view" in which they have found waiver where a plaintiff has alleged more than "garden variety" emotional distress and has instead alleged emotional distress that is "complex" or has resulted in specific disorders. *Id*. at 637 (citing Weinstein's Federal Evidence § 504.07[8] & n. 22.4).

This court finds persuasive the reasoning in *Fitzgerald*, in which the court concluded that the broad and "limited broad" views of waiver are not consistent with *Jaffee*. *Id*. at 637-640. Those approaches are not sufficiently protective of the psychotherapist-patient privilege and come too close to the type of balancing that the Supreme Court so emphatically rejected in *Jaffee*. Rather, the

1 narrow approach best embodies the goals set forth in *Jaffee*. Applying that approach here, the Court
2 finds no waiver of the psychotherapist-patient privilege. While documents tending to show that
3 Cammerin Boyd intended to commit suicide would certainly be relevant to the "suicide by cop"
4 defense the City and County of San Francisco would like to assert, nothing in Plaintiffs' own claims
5 placed such communications in issue.[4]

6 Accordingly, the Motion is granted as to the psychotherapist-patient records.

### D. Protective Order

8 CDCR and Plaintiffs have requested entry of a protective order if this Court compels the
9 production of any documents sought by the City and County of San Francisco. The City and County
10 of San Francisco objects to the terms of the protective order sought by Plaintiffs, arguing that they
11 are overly restrictive. In particular, Defendant objects to the provisions: 1) prohibiting disclosure to
12 any defendant; and 2) limiting access to the courtroom if these documents are discussed at trial.
13 With respect to the first objection, the Court rules that any medical records produced subject to the
14 protective order shall be designated Attorneys' and Experts Eyes Only. Issues regarding access to
15 the courtroom shall be determined by the trial judge.

16 The parties are directed to meet and confer regarding a final form of order for signature by
17 the undersigned magistrate judge.

## IV. CONCLUSION

19 For the reasons stated above, the Motion is GRANTED in part and DENIED in part. The
20 following documents sought by Defendant City and County of San Francisco shall be produced: all
21 medical records sought in the subpoenas served on CDCR, dated November 4, 2005, except for
22 records that contain communications between Cammerin Boyd and any licensed mental health care

---

[4] The Court also declines to find waiver on the basis that CDCR's objection was untimely. It is evident from the record that after the subpoenas were served, CDCR informed Defendant it needed a release from Plaintiffs. There is no indication that Defendant informed CDCR that such a consent would not be forthcoming and indeed, Defendant did not send a written request to Plaintiffs for such a consent until December 16, 2005. In light of the uncertainty surrounding Plaintiffs' possible release, the Court concludes that any delay on the part CDCR in objecting the subpoenas does not provide a sufficient basis on which to find waiver of the psychotherapist-patient privilege. *See In re DG Acquisition Corp.*, 151 F.3d 75, 81 (noting that courts are often reluctant to find waiver of privilege on the basis of inaction).

professional made in the course of seeking treatment.  The parties are directed to meet and confer within fourteen (14) days of the date of this order regarding a proposed protective order, which shall be submitted to the Court for approval no later than twenty-one (21) days of the date of this order.

IT IS SO ORDERED.

Dated: May 18, 2006

_____
JOSEPH C. SPERO
United States Magistrate Judge